IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAVEL POLINOVSKY, and ILONA POLINOVSKY, on behalf of themselves and all others similarly situated | ) ) ) | No. 1:11-cv-779 |
| | ) | Judge Ruben Castillo |
| Plaintiffs, | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| v. | ) ) | |
| BRITISH AIRWAYS PLC, and INTERNATIONAL AIRLINES GROUP, S.A., | ) ) ) | |
| Defendants. | ) ) | |

**BRITISH AIRWAYS PLC'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Christopher R. Christensen
Michael J. Holland
Anthony U. Battista
CONDON & FORSYTH LLP
7 Times Square
New York, New York 10036
Telephone: (212) 894-6700
Facsimile: (212) 370-4453

- and -

Michael L. McCluggage
Brent R. Austin
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

*Attorneys for Defendant
BRITISH AIRWAYS PLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT .............................................................................................................................. 1

I.     Plaintiffs' Breach of Contract Claim is Preempted by the Airline Deregulation Act ................ 1

         A.    The *Wolens* Exception Does Not Apply to All Breach of Contract
             Claims ........................................................................................................... 2

         B.    Plaintiffs' Claim is Exactly the Type of Action the ADA Seeks to
             Preempt ......................................................................................................... 4

         C.    ADA Preemption Prohibits a State from Enforcing Any
             Law, Regulation or Policy External to the Contract ...................................... 5

II.    The Montreal Convention Exclusively Governs Plaintiffs' Rights and Preempts
     Plaintiffs' Breach of Contract Claim ....................................................................................... 5

         A.    Supreme Court Precedent Firmly Establishes that the Montreal
             Convention Preempts State Law Causes of Action ....................................... 6

          B.    The Seventh Circuit Adheres to the Supreme Court's Rule of
             Exclusivity ................................................................................................... 8

         C.    The Montreal Convention Expressly Prohibits Non-Compensatory
             Damages ....................................................................................................... 9

III.   Pursuant to the Air Transport Agreement, EC 261 Does Not and Cannot Apply
     to Flights Departing From the United States ........................................................................... 10

         A.    The United States Did Not Agree to Apply EC 261 to Flights
             Departing From the United States ................................................................ 10

          B.    Exisiting United States Law Prohibits the Application of EC 261 to
             Flights Departing From the United States .................................................... 11

IV.   Plaintiffs Provide No Justifiable Rationale for Failing to Exhaust Their
     Administrative Remedies ......................................................................................................... 12

V.    Plaintiffs' Claim Should Be Adjudicated in the European Union ........................................... 13

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Airlines, Inc. v. Wolens*
    513 U.S. 219 (1995) ...................................................................................... 1, 2, 3

*Chukwu v. Air France*,
    218 F. Supp. 2d 979 (N.D. Ill. 2002) ...................................................................... 6

*Cosgrove-Goodman v. UAL Corp.*,
    No. 10-1908, 2010 WL 2197674 (N.D. Ill. June 2, 2010) ...................................... 8

*El Al Israel Airlines, Ltd. v. Tseng*,
    525 U.S. 155 (1999) .............................................................................. 6, 7, 8, 9

*Empagran S.A. v. F. Hoffman-La Roche Ltd.*,
    453 F. Supp. 2d 1 (D.D.C. 2006) .......................................................................... 13

*F. Hoffman-La Roche Ltd. v. Empagran, S.A.*,
    542 U.S. 155 (2004) ............................................................................................. 13

*Gonzalez v. O'Connell*,
    355 F. 3d 1010 (7th Cir. 2004) ............................................................................. 12

*In re Air Crash at Lexington, Ky.*,
    501 F. Supp. 2d 902 (E.D. Ky. 2007) ................................................................. 7, 8

*In re Vioxx Products Liability Litig.*,
    448 F. Supp. 2d 741 (E.D. La. 2006) .................................................................... 13

*Lanigan v. Resolution Trust Corp.*,
    No. 91-7216, 1993 WL 189884 (N.D. Ill. June 2, 1993) ...................................... 12

*Lombardi v. Board of Trustees Hinsdale School*,
    463 F. Supp. 2d 867 (N.D. Ill. 2006) .................................................................... 12

*Missing Link Jewelers, Inc. v. UPS, Inc.*,
    No. 09-3539, 2009 WL 5065682 (N.D. Ill. Dec. 16, 2009) .................................... 3

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................................... 4

*Narkiewicz-Laine v. Scandanavian Airlines Systems,*
 587 F. Supp. 2d 888 (N.D. Ill. 2008)..................................................................8

*Onoh v. Northwest Airlines, Inc.,*
 613 F.3d 596 (5th Cir. 2010) ....................................................................3, 5

*Piper Aircraft Co. v. Reyno,*
 454 U.S. 235 (1981) .....................................................................................13

*ProCD, Inc. v. Zeidenberg,*
 86 F.3d 1447 (7th Cir. 1996) ......................................................................2

*Rowe v. New Hampshire Motor Transport Ass'n,*
 552 U.S. 364 (2008) .....................................................................................4

*Sanchez v. Aerovias de Mexico, S.A. de C.V.,*
 590 F.3d 1027 (9th Cir. 2010) ....................................................................5

*Schoeffler-Miller v. Northwest Airlines, Inc.,*
 No. 08-4012, 2008 WL 4936737 (C.D. Ill. Nov. 17, 2008) .....................7

*Smith v. Comair, Inc.,*
 134 F.3d 254 (4th Cir. 1998) ......................................................................5

*Sompo Japan Ins., Inc v. Nippon Cargo Airlines, Co., Ltd.,*
 No. 02-9311, 2006 WL 2579706 (N.D. Ill. Sept. 4, 2006).......................8

*Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.,*
 522 F.3d 776 (7th Cir. 2008) ...................................................................8, 9

*Sturgeon v. Condor Flugdienst GmbH,*
 2009 E.C.R. I-10923 (Nov. 19, 2009) ........................................................3

*Treiber & Straub, Inc. v. UPS, Inc.,*
 474 F.3d 379 (7th Cir. 2007).....................................................................2, 3

*Tseng v. El Al Israel Airlines, Ltd.,*
 122 F.3d 99 (2d Cir. 1997) ..........................................................................7

*Voda v. Cordis Corp.,*
 476 F.3d 887 (Fed. Cir. 2007) ..................................................................13

## STATUTES

Airline Deregulation Act, 49 U.S.C. § 41713 (2010)............................................*passim*

Convention for the Unification of Certain Rules for International Carriage by Air, done at
 Montreal on May 28, 1999, (entered into force on November 4, 2003), S. Treaty Doc.
 106-45, 1999 WL 33292734, 2242 U.N.T.S. 350 (2000)................................*passim*

European Union Regulation (EC) No 261/2004...................................................................*passim*

Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.* (2010)...........................................................11

**OTHER AUTHORITIES**

14 C.F.R. § 250 (2011) ........................................................................................................3, 11, 12

5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.
2010)............................................................................................................................................8

Amicus Curiae Brief of the United Kingdom of Great Britain & Northern Ireland,
Ireland, and the Kingdom of the Netherlands, *F. Hoffman-La Roche Ltd. v.
Empagran, S.A.*, 542 U.S. 155 (2004) (No. 03-724), 2004 WL 226597 ...............................13

Senate Report No. 108-8 (2003).........................................................................................................7

United States-European Union Air Transport Agreement, Apr. 27 and 30, 2007, 2007 WL
2197632, 46 I.L.M. 470 ...........................................................................................................10

**ARGUMENT**

The Motion to Dismiss filed by British Airways PLC ("BA") sets forth five independent grounds upon which to dismiss this putative class action. The underlying purpose of the laws relied upon by BA in its motion is to ensure uniformity in the application of laws governing aviation in the United States. The Airline Deregulation Act, the Montreal Convention, the Air Transport Agreement and the principles of administrative exhaustion and international comity exist to prevent the application of regulatory schemes that encroach upon and conflict with an area of law exclusively governed by the United States federal government. Plaintiffs are asking this Court to disregard the supremacy of United States federal law by seeking to enforce a conflicting European Union consumer protection law via a state law breach of contract action. This Court should decline to do so.

## I.    Plaintiffs' Breach of Contract Claim is Preempted by the Airline Deregulation Act

Plaintiffs' breach of contract claim should be dismissed because it is preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713 (2010). The ADA expressly prohibits state action amounting to enforcement of a law or policy relating to the "prices, routes, or services" of an airline. *Id.* While Plaintiffs concede that their claim relates to BA's services,[1] they argue that their breach of contract claim is not preempted based on the exception to preemption established in *American Airlines, Inc. v. Wolens* (the "*Wolens* exception"). 513 U.S. 219, 228 (1995). Plaintiffs' argument that the *Wolens* exception applies to all breach of contract claims is simply wrong; the *Wolens* exception only applies to "routine" breach of contract claims "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertaking." *Id.* at 228, 232. Where, as here, Plaintiffs' breach of contract claim would require the Court to

---

[1] *See* Plaintiffs' Response to Defendant's Motion to Dismiss dated June 10, 2011 ("Pls.' Resp."), at p. 5, n.1.

consider laws, regulations and policies outside the four corners of the contract, the *Wolens* exception does not apply. *See Treiber & Straub, Inc. v. UPS, Inc.*, 474 F.3d 379, 387 (7th Cir. 2007).

### A. The *Wolens* Exception Does Not Apply to All Breach of Contract Claims

Plaintiffs argue that their claim for breach of contract is not preempted by the ADA because their right to compensation under European Union Regulation No (EC) 261/2004 ("EC 261") is a contractual one pursuant to BA's Conditions of Carriage. However, *Wolens* and its progeny do not stand for the proposition that all breach of contract claims are automatically exempted from ADA preemption; rather the exception only applies if (1) the breach of contract claim is "routine," and (2) the court need only look to the airline's "own, self-imposed undertaking" expressly provided for in the contract to adjudicate plaintiff's claim. *Wolens*, 513 U.S. at 228, 232; *see ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996) (it is "prudent to refrain from adopting a rule that anything with the label 'contract' is necessarily outside the preemption clause: the variations and possibilities are too numerous to foresee"). Because Plaintiffs' claim does not satisfy either of these requirements, Plaintiffs cannot rely on *Wolens* to save their claim from ADA preemption.

Plaintiffs' claim is not a "routine" breach of contract claim that simply would require the Court to enforce the terms of the contract as written. BA's Conditions of Carriage do not provide for compensation for cancellation or delay pursuant to EC 261. Rather, BA's Conditions of Carriage state only that BA will provide assistance and compensation "*if required to do so by any law which may apply.*" Ex. C., Complaint, ¶ 16 (emphasis added by Plaintiffs).[2] Despite the absence of any reference to EC 261 in BA's Conditions of Carriage, Plaintiffs claim that this

---

[2] Regarding references to Exhibits A-O in this Reply Memorandum of Law, BA respectfully refers the Court to the exhibits attached to its opening Memorandum of Law dated May 6, 2011.

"self-drafted obligation[] clearly commit[s] BA to compensate passengers . . . consistent with EC 261." Pls.' Resp. at p. 2. For Plaintiffs' argument to succeed, the Court would have to enlarge the terms of BA's Conditions of Carriage to incorporate the terms of EC 261.[3] If the Court were forced to enlarge BA's contract with its customers in this manner, the *Wolens* exception would not apply. *See Wolens*, 513 U.S. at 228; *Treiber*, 474 F.3d at 387; *Missing Link Jewelers, Inc. v. UPS, Inc.*, No. 09-3539, 2009 WL 5065682, at *2 (N.D. Ill. Dec. 16, 2009) (finding that, because plaintiff's breach of contract claim would require the court to assess and apply Illinois' contract penalty rules, plaintiff's claim "falls outside the *Wolens* exception and must be dismissed").

The reference to "any law which may apply" in BA's Conditions of Carriage does not turn the EC 261 requirements into "self-imposed obligations," as Plaintiffs suggest. *Onoh v. Northwest Airlines, Inc.* 613 F.3d 596, 600 (5th Cir. 2010) directly addressed this issue. In *Onoh*, the Fifth Circuit held that an airline's contractual obligation to comply with applicable law did not transform foreign law into a "self-imposed obligations." *Id.* BA's reference to "any law which may apply" cannot be construed as imposing EC 261 contractual obligations upon BA, particularly where the terms of EC 261 are completely absent from BA's Conditions of Carriage and, moreover, conflict with the ADA, United States federal regulations,[4] and the Montreal Convention.[5]

---

[3] Moreover, with respect to Plaintiffs' argument that BA's Conditions of Carriage provide for EC 261 compensation for delays, the Court would have to go further and incorporate the European Court of Justice's controversial interpretation of EC 261 in *Sturgeon v. Condor Flugdienst GmbH*, 2009 E.C.R. I-10923 (Nov. 19, 2009).

[4] *See* 14 C.F.R. § 250 (2011).

[5] *See* Sections II and III, *infra*.

**B.**     **Plaintiffs' Claim is Exactly the Type of Action the ADA Seeks to Preempt**

Congress included the express preemption clause in the ADA to "ensure that the States would not undo federal deregulation with regulations of their own" in order to guarantee that competitive market forces are unimpeded by state enforcement of laws, policies, and regulations. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992); *see also Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 373 (2008) (holding that a regulatory patchwork of state laws, rules and regulations is "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace"). Plaintiffs' state law cause of action is exactly what the ADA seeks to preempt because Plaintiffs' breach of contract claim, if allowed to proceed, would lead to disparate application of airline consumer protection regulations in the United States.

Plaintiffs argue that "if airlines cannot be held to their bargains with passengers, then these agreements are essentially meaningless." Pls.' Resp. at p. 12. In fact, it is Plaintiffs' own plea that the Court add new terms to BA's "bargain" which would render the Conditions of Carriage meaningless and tamper with an area of law exclusively governed by the United States federal government. Specifically, the United States government, through the airline consumer protection provisions of the Federal Aviation Regulations, already exclusively occupies this territory. The conflict between this existing body of United States law and EC 261 is what the ADA expressly seeks to prevent. Accordingly, while Plaintiffs are free to exercise their rights under EC 261 separately in accordance with European Union procedures,[6] their right to redress cannot be brought in the United States via a state law breach of contract action.

---

[6] *See* Section IV, *infra*.

C.     **ADA Preemption Prohibits a State from Enforcing Any Law, Regulation or Policy External to the Contract**

Plaintiffs argue that since their breach of contract claim derives from a foreign regulation rather than "the enactment or enforcement of *state* law," their claim cannot be preempted by the ADA. Pls.' Resp. at p. 11. For ADA preemption, the external law need not be a state law or regulation because the preemptable act is the state law action to enforce the foreign regulation.

The preemption provision of the ADA provides that: "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713. Consistent with this plain language, ADA preemption is not limited only to the attempted enforcement of state statutes or regulations; the ADA also preempts contract claims that require a court to evaluate any laws or regulations external to the contract itself, regardless of their origin. *See, e.g.*, *Sanchez v. Aerovias de Mexico, S.A. de C.V.*, 590 F.3d 1027, 1028 (9th Cir. 2010) (ADA preemption of foreign tax law); *Onoh*, 613 F.3d at 601 (ADA preemption of international agreements); *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998) (ADA preemption of federal regulation). Thus, the ADA expressly preempts a state law breach of contract claim that would require a court to enforce a foreign regulation and interpret foreign case law.

II.     **The Montreal Convention Exclusively Governs Plaintiffs' Rights and Preempts Plaintiffs' Breach of Contract Claim**

Plaintiffs argue that the Montreal Convention[7] does not preempt their state law breach of contract claim based on Seventh Circuit and Northern District Illinois cases "directly on

---

[7] *See* Ex. A, Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, (entered into force on November 4, 2003), S. Treaty Doc. 106-45, 1999 WL 33292734, 2242 U.N.T.S. 350 (2000) ("Montreal Convention").

point."[8]   Pls.' Resp. at p. 14.   Plaintiffs' argument fails because (1) they completely ignore United States Supreme Court precedent firmly establishing that where a passenger's claim falls within the scope of the Montreal Convention the passenger is "preclude[d] . . . from bringing actions under local law" (*El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 175 (1999); *see also Chukwu v. Air France*, 218 F. Supp. 2d 979 (N.D. Ill. 2002)); (2) the Seventh Circuit and Northern District of Illinois case law relied upon by Plaintiffs confirm that the Montreal Convention's rule of exclusivity requires dismissal; and (3) the Montreal Convention expressly prohibits non-compensatory damages from being awarded for a delay in international transportation.

### A.   Supreme Court Precedent Firmly Establishes that the Montreal Convention Preempts State Law Causes of Action

In *El Al Israel Airlines, Ltd. v. Tseng*, the United States Supreme Court held that the exclusivity provision of the Warsaw Convention, Article 24,[9] should be read in accordance with the "Convention's text, purpose, and overall structure" (525 U.S. at 169) to "preclude a passenger from asserting any air transit personal injury claims under local law." *Id.* at 168.   The Court pronounced this "rule of exclusivity" (*id.* at 175) in the context of deciding whether a passenger was entitled to damages under New York state tort law where the Warsaw Convention applied and precluded her from recovering damages. *See id.* at 160, 167.   The Second Circuit

---

[8] Notably, Plaintiffs do not contest that their claim arises from a delay in their international transportation and, accordingly, falls within the scope of Article 19 of the Montreal Convention.   Rather, Plaintiffs argue the incorrect proposition that the Montreal Convention is not preemptive in nature.

[9] As explained in BA's opening Memorandum of Law (at pp. 14-15), cases interpreting the Warsaw Convention continue to have precedential value with respect to substantively similar provisions of the Montreal Convention.   As Plaintiffs concede, Article 29 of the Montreal Convention maintains "virtually the same language" as Article 24 of the Warsaw Convention and case law interpreting Article 24 of the Warsaw Convention applies here.   Pls.' Resp. at p. 14.

had held that because plaintiff could not recover damages under the Warsaw Convention[10] she could seek alternative relief under state law. *See Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99 (2d Cir. 1997). The Supreme Court reversed, holding that plaintiff's "recovery[,] . . . if not allowed under the Convention, is not available at all." *Tseng*, 525 U.S. at 161. The Court stated that, based on the drafting history of the Convention, "the preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Id.* at 175.

In adopting the Montreal Convention, the United States government made clear that the Warsaw Convention's preemptive effect, as established by the Supreme Court in *Tseng*, applies equally to claims falling under the Montreal Convention. As the Senate Foreign Relations Committee reported: "In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States. The negotiators of the Montreal Convention intended to preserve these precedents." Senate Foreign Relations Committee's report on the Montreal Convention, S. Rep. No. 108-8, at 3 (2003).

Accordingly, because Plaintiff's claim is within the scope of the Montreal Convention, the Convention's rule of exclusivity applies and mandates that Plaintiffs' claim "is completely preempted by the terms of that treaty . . ." *Schoeffler-Miller v. Northwest Airlines, Inc.*, No. 08-4012, 2008 WL 4936737, at *3 (C.D. Ill. Nov. 17, 2008) (citing *Tseng* as support); *In re Air Crash at Lexington, Ky.*, 501 F. Supp. 2d 902, 913 (E.D. Ky. 2007) ("[C]ircuit courts considering

---

[10] The Court of Appeals found that plaintiff was not entitled to damages under the Convention because plaintiff's claim for injuries, allegedly sustained while embarking on international transportation during an intrusive security search at JFK airport, did not arise from an "accident" as required to establish liability under Article 17 of the Warsaw Convention. *See* 122 F.3d at 103-04.

the issue [of exclusivity] after *Tseng* all agree [that both] the Warsaw and Montreal Conventions provide the exclusive remedy for claims within the scope of the treaties.").[11]

## B.  The Seventh Circuit Adheres to the Supreme Court's Rule of Exclusivity

Plaintiffs argue that their claim is not preempted by the Montreal Convention based on a misreading of *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776 (7th Cir. 2008).   Contrary to Plaintiffs' assertion, *Sompo* confirms that the Seventh Circuit follows established United States Supreme Court precedent that claims falling within the scope of the Montreal Convention are exclusively governed by that treaty.

In *Sompo*, plaintiff sued an airline and two freight forwarders for damage to an international cargo shipment.   Plaintiff settled with the two freight forwarders only and proceeded to trial against the airline.   At trial, the district court (Lefkow, J.) entered judgment against the airline in accordance with the liability limitations of the Warsaw Convention.   522 F.3d at 785 (referencing *Sompo Japan Ins., Inc v. Nippon Cargo Airlines, Co., Ltd.*, No. 02-9311, 2006 WL 2579706 (N.D. Ill. Sept. 4, 2006)).   The issue before the Seventh Circuit was whether

---

[11] In reaching this conclusion, the court recognized that some district courts have questioned the preemptive scope of the Conventions in the context of federal question jurisdiction, which "cannot be based on a defense." 501 F. Supp. 2d at 909.  Plaintiffs rely on two such cases: *Narkiewicz-Laine v. Scandanavian Airlines Systems*, 587 F. Supp. 2d 888 (N.D. Ill. 2008) and *Cosgrove-Goodman v. UAL Corp.*, No. 10-1908, 2010 WL 2197674 (N.D. Ill. June 2, 2010).  These cases, which hold that "the conditions and limits of the Montreal Convention are defenses . . . [and] do not provide a basis for federal-question subject matter jurisdiction," do not apply to this case. 587 F. Supp. 2d at 889-90; *see also* 2010 WL 2197674, at *3.

Unlike the cases cited by Plaintiffs, "[t]he question [here] is not . . . whether a claim must be brought in federal court [but rather] . . . whether the claim must be brought under federal treaty law or not at all." *In re Air Crash at Lexington, Ky.*, 501 F. Supp. 2d at 909.  Moreover, because the issue here is whether Plaintiffs' Complaint states a claim upon which relief may be granted, affirmative defenses like the Montreal Convention are grounds for dismissal. *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2010).  Accordingly, because Plaintiffs concede that the Montreal Convention is an affirmative defense and do not contest that their claim falls within the scope of Article 19 (Pls.' Resp. at p. 14), the Montreal Convention's rule of exclusivity warrants dismissal of Plaintiffs' Complaint.

the airline, which had asserted a contribution claim against the freight forwarders, was entitled to use the settlement reached with the freight forwarders to "setoff" the judgment. 522 F.3d at 779.

Plaintiff argued that the airline was not entitled to a setoff because the Warsaw Convention preempted the airline's contribution claims. The Seventh Circuit rejected plaintiff's argument because state law contribution claims are not addressed by the Warsaw Convention. Whereas "the Warsaw Convention preempts local law causes of action to the extent that they are inconsistent with the Convention" (*id.* at 781 (citing *Tseng*, 525 U.S. at 161, 175)), the airline's right to contribution is not preempted because "the Warsaw Convention does not, by its own terms, address the issue." *Id.* at 782.

Unlike the airline's contribution claim in *Sompo*, Plaintiffs' right to damages arising from the delay in their international transportation falls directly within the scope of Article 19 of the Montreal Convention and, therefore, is expressly preempted by the terms of the Convention. *See* Ex. A, Montreal Convention, Articles 1, 19, 29.

### C. The Montreal Convention Expressly Prohibits Non-Compensatory Damages

Plaintiffs argue that EC 261 does not conflict with the Montreal Convention because EC 261's "standardized compensation" is "separate from individualized compensation which may be provided by other laws upon individualized proof." Pls.' Resp. at p. 3. Such non-compensatory compensation is not permitted by the Montreal Convention. *See* Montreal Convention, Article 29 ("punitive, exemplary or any other non-compensatory damages shall not be recoverable"). Plaintiffs' attempt to avoid their burden to prove damages under the Montreal Convention by framing their Complaint in state law must fail. *See id.*; *Tseng*, 525 U.S. at 175; *Sompo*, 522 F.3d at 782.

### III. Pursuant to the Air Transport Agreement, EC 261 Does Not and Cannot Apply to Flights Departing From the United States

The 2007 Air Transport Agreement between the United States and the European Union[12] provides that United States federal law – not EC 261 – governs flights departing from the United States. Plaintiffs argue that the Court should not follow the Air Transport Agreement because no decisions have interpreted it yet.[13] Such an argument is not a proper basis upon which to reject a United States treaty. Moreover, Plaintiffs overlook that (1) the United States has not agreed to apply EC 261, or any other European Union consumer protection law, to flights departing from United States, and (2) the application of EC 261 to flights departing from the United States would conflict with the existing body of United States law that governs civil aviation. Allowing the application of foreign laws to flights departing from the United States is precisely what the Air Transport Agreement is designed to prevent.

### A. The United States Did Not Agree to Apply EC 261 to Flights Departing From the United States

The United States signed the Air Transport Agreement[14] on April 30, 2007, three years after the European Community enacted EC 261. *See* Ex. B. The Air Transport Agreement explicitly contemplated the issue of consumer protection (*see id.* at Article 16), but makes no reference to EC 261 in the "Consumer Protection" provision, or anywhere else in the Agreement. Moreover, the Agreement expressly provides that United States airlines will abide by other European Union regulations concerning other areas of civil aviation. *See id.* at Article 13(2).

---

[12] *See* Ex. B., United States-European Union Air Transport Agreement, Apr. 27 and 30, 2007, 2007 WL 2197632, 46 I.L.M. 470.

[13] Plaintiffs emphasize the lack of case law to date discussing the 2007 Air Transport Agreement, but Plaintiffs have offered no support for their argument that the Air Transport Agreement, entered into in accordance with the international treaty known as the Chicago Convention, should be ignored.

[14] The European Community adopted EC 261 on February 11, 2004, and it went into effect on February 18, 2005. *See* Ex. G, EC 261.

This provision demonstrates that the United States did not intend EC 261 to apply to flights departing from the United States.

### B. Existing United States Law Prohibits the Application of EC 261 to Flights Departing From the United States

The absence of any reference to EC 261 in the Air Transport Agreement makes sense because the United States could not have agreed to apply EC 261 without addressing its impact on the existing body of federal law that governs civil aviation for flights departing from the United States. The regulation of civil aviation within the United States is within the exclusive authority of the United States federal government. *See* Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.* In accordance with this authority, the federal government has established a system of laws governing domestic and international aviation within its territory, comprised of statutory laws such as the ADA, international treaties such as the Montreal Convention, and federal regulations such as Title 14 of the Code of Federal Regulations.

As established above,[15] the application of EC 261 to flights departing from the United States would directly conflict with the ADA and the Montreal Convention because it would (1) encroach upon the federal government's authority to regulate "rates, routes, or services" of an airline, and (2) permit recovery for non-compensatory damages arising from delays occurring in international transportation. EC 261 also conflicts with Title 14 of the Code of Federal Regulations, as promulgated by the United States Department of Transportation. Specifically, 14 C.F.R. § 250 regulates airline oversales and provides for compensation to passengers who are involuntarily denied boarding on a domestic or international flight originating at a point in the

---

[15] *See* Sections I and II, *supra.*

United States. *See* 14 C.F.R. § 250. Were EC 261 to apply to flights departing from the United States, the Regulation would directly conflict with this existing United States law.[16]

## IV. Plaintiffs Provide No Justifiable Rationale for Failing to Exhaust Their Administrative Remedies

Rather than address why they failed to follow European Union procedures for filing claims under EC 261, Plaintiffs simply contend that "[n]othing in EU 261 prevents [them] from seeking relief by filing a breach of contract claim in this court." Pls.' Resp. at p. 18. By sidestepping the issue, Plaintiffs ignore the numerous instances where courts have dismissed breach of contract actions because plaintiffs failed to exhaust their prescribed administrative remedies. *See, e.g., Lombardi v. Board of Trustees Hinsdale School*, 463 F. Supp. 2d 867, 873 (N.D. Ill. 2006) ("Failure to exhaust his administrative remedies is fatal to [plaintiff's] breach of contract claim."); *Lanigan v. Resolution Trust Corporation*, No. 91-7216, 1993 WL 189884 (N.D. Ill. June 2, 1993).

Moreover, Plaintiffs misconstrue why their breach of contract claim should be dismissed under principles of international law. While a dismissal under such principles would be discretionary (*see, e.g., Gonzalez v. O'Connell*, 355 F. 3d 1010, 1017 (7th Cir. 2004) ("the Agency *should* have the opportunity…to provide the petitioner the ultimate relief requested in the first instance." (emphasis added)), dismissal is certainly warranted here; not only did Plaintiffs fail to exhaust their European Union remedies by filing a complaint with an EU National Enforcement Body, Plaintiffs did not even file a claim with BA. Refusing to explain

---

[16] Article 4 of EC 261, entitled "Denied boarding," expressly regulates delays and cancellations caused by the "refusal to carry passengers on a flight . . . except where there are reasonable grounds to deny them boarding such as reasons of health, safety or security . . ." Ex. G, EC 261, Article 2(j) (defining "denied boarding"). As explained in Section I(B) above, the United States denied boarding regulation sets forth its own conditions for the applicability of denied boarding compensation, which conflict with the application of Article 4 of EC 261. *Compare* EC 261, Article 4 (setting forth the rules for denied boarding compensation) *with* 14 C.F.R. §§ 250.2, 250.2a, 250.2b, 250.6 (setting forth the rules and exceptions to denied boarding compensation for flights originating in the United States).

their failure to take these steps, Plaintiffs now seek to use the United States legal system to seek redress without giving BA an opportunity to address their claim.[17]     Plaintiffs should not be allowed to do so.

## V.     Plaintiffs' Claim Should Be Adjudicated in the European Union

EC 261 was enacted to regulate European commerce and air carriers by providing a framework for *exclusive* European enforcement of the regulation and adjudication of claims thereunder.   This system does not provide for the involvement of non-EU courts (even if the subject flights originate in third countries), nor does it allow such courts to obtain opinions from the European Court of Justice on unresolved issues of European Union law, as the courts of the EU Member States can.   United States courts have respected such frameworks and appropriately refused to exercise supplemental jurisdiction over claims arising under European Union law on the basis of international comity.  *See Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007); *Empagran S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 12-13 (D.D.C. 2006).   This Court should follow suit and dismiss Plaintiffs' Complaint in its entirety.

## CONCLUSION

The United States federal government must maintain its exclusive authority to regulate and control air transportation.   Through an existing body of United States federal law, comprised of international treaties, statutes and regulations, the federal government has developed a

---

[17] Although outside the scope of this Motion, Plaintiffs complain that there is "not even a forum available in Europe in which to pursue this action on a class action basis." Pls.' Resp. at pp. 23-24. Plaintiffs are correct that no European Union forum exists to pursue their claim in a class action. However, this is not an oversight. The EU Member States have intentionally rejected the use of the class actions in their legal systems. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242 n.18 (1981); *see also In re Vioxx Products Liability Litig.*, 448 F. Supp. 2d 741 (E.D. La. 2006); Amicus Curiae Br. of the United Kingdom of Great Britain & Northern Ireland, Ireland, and the Kingdom of the Netherlands, *F. Hoffman-La Roche Ltd. v. Empagran, S.A.*, 542 U.S. 155 (2004) (No. 03-724), 2004 WL 226597, at *13, *15 (the limitation or lack of "generous class action certifications, broad discovery rules ... jury trials, subsidized contingency fee arrangements, [and] asymmetrical rules on payment of attorneys' fees" are not mere oversights).

uniform regulatory regime to be followed by the hundreds of domestic and foreign air carriers that operate in the United States. This uniform regulatory regime is the bedrock of civil aviation law in the United States and should not be amended by the enforcement of a conflicting European Union consumer protection law via a state law breach of contract action. Accordingly, Plaintiffs' Complaint should be dismissed in its entirety.

Dated: June 24, 2011

Respectively submitted,

CONDON & FORSYTH LLP

By

Christopher R. Christensen
Michael J. Holland
Anthony U. Battista
7 Times Square
New York, New York 10036
Telephone: (212) 894-6700
Facsimile: (212) 370-4453

- and -

WILDMAN, HARROLD, ALLEN & DIXON LLP
Michael L. McCluggage
Brent R. Austin
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

*Attorneys for Defendant*
*BRITISH AIRWAYS PLC*

## CERTIFICATE OF SERVICE

I, Christopher R. Christensen, an attorney, hereby certify that on June 24, 2011, I caused

a copy of Defendant British Airways PLC's Reply Memorandum of Law in Further Support of

Its Motion to Dismiss Plaintiffs' Complaint to be served on all counsel of record via the court's

CM/ECF System, which will send electronic notification to the parties and registered attorneys

of record that the document has been filed and is available for viewing and downloading, and via

e-mail.

PLAINTIFFS' COUNSEL OF RECORD:

Hank Bates
CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel: (501) 312-8500
Fax: (501) 312-8505
Email: hbates@carneywilliams.com

Jennifer W. Sprengel
CAFFERTY FAUCHER LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Tel: (312) 782-4880
Fax: (312) 782-4485
Email: jsprengel@caffertyfaucher.com

Vladimir M. Gorokhovsky
LAW OFFICES OF VLADIMIR M.
GOROKHOVSKY
6045 North Green Bay Avenue
Suite 2A
Glendale, WI 53209
Email: gorlawoffice@yahoo.com


Christopher R. Christensen